[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 27, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-13856

_____

D.C. Docket No. 04-00650-CV-T-17-EAJ


ACCESS FOR AMERICA, INC.,
a Florida not for profit corporation,
DOUG WILDER,

                                        Plaintiff-Appellants,

versus

ASSOCIATED OUT-DOOR CLUBS, INC.,
a Florida Corporation,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 27, 2006)**

Before TJOFLAT, BARKETT and HILL, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants Access for America, Inc., a Florida not for profit corporation (Access) and Doug Wilder, individually (Wilder), filed a complaint pursuant to Title III of the Americans With Disabilities Act of 1990 (ADA), against Defendant-Appellee Associated Out-Door Clubs, Inc., a Florida corporation d/b/a Tampa Greyhound Track (Track), alleging that the Track discriminated against Wilder and Access by failing to remove certain architectural barriers that impeded Wilder's wheelchair access to the Track facility. The district court granted Track's motion to dismiss for lack of subject matter jurisdiction based upon the lack of standing by Access and Wilder to pursue injunctive and declaratory relief under Rule 12(b)(1), Fed.R.Civ.P. This appeal followed.

We have carefully reviewed the record and considered the briefs and the oral arguments of the parties. Based thereupon, we find no error in the district court's conclusion that, as Wilder lacked the requisite concrete and specific intent to return to the Track because he could not demonstrate that there was any reasonable chance of his revisiting the Track, other than "someday," he was not entitled to injunctive relief. We also find no error in the district court's ruling that, because Wilder also failed to prove a threat of future injury, he lacked standing to seek declaratory relief as well.

As Access' standing was dependent upon Wilder's standing, Access lacked standing to pursue injunctive and declaratory relief in the district court as well.

The judgment of the district court is affirmed.

**AFFIRMED.**

BARKETT, Circuit Judge, dissenting:

Because standing under the ADA does not depend upon a plaintiff's prediction of a specific date of return to allegedly noncompliant facilities, I would reverse the district court's Rule 12(b)(1) dismissal of Doug Wilder's complaint. Wilder simply had to demonstrate that his return to Associated's facilities was likely, and not merely speculative. The record overwhelmingly confirms that Wilder made the showing necessary under the precedents of both the Supreme Court and this Court.

The district court concluded that "Plaintiff's evidence is speculative and establishes only 'someday' intentions of returning to the Track," and is therefore "inadequate under Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)." Lujan explains that "the irreducible constitutional minimum of standing contains three elements." Id. at 560 (internal citations and quotation omitted).[1] There is no question that Wilder satisfied the first two elements, and that the district court's ruling was based on Wilder's failure under the third prong to show that "it [is]

---

[1] "First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical, . . . Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan, 504 U.S. at 560-61.

likely, as opposed to merely speculative, that the [alleged] injury will be redressed by a favorable decision."  Id. at 561.

The facts of Lujan illuminate what "speculative" means for the purpose of Article III standing.  That case was brought under the Endangered Species Act by one plaintiff who sued to enjoin the rehabilitation of the Aswan High Dam because of endangered Nile crocodiles, and another who sued to protect various species in Sri Lanka.  The first plaintiff had traveled to Egypt only once, in 1986; the second traveled to Sri Lanka only once, in 1981.  Except for a generalized wish to return to Egypt and Sri Lanka "in the future" – those, apparently, were their exact words – neither plaintiff offered any indication when they would next visit the environmental treasures they hoped to rescue.  Id. at 563-64.  The Supreme Court held that "such 'some day' intentions – without any description of concrete plans, or indeed even any specification of when the some day will be – do not support a finding of the 'actual or imminent' injury that our cases require."  Id. at 564.

Despite structural barriers allegedly in violation of the ADA, Wilder, who has muscular dystrophy and is confined to a wheelchair, nonetheless professes a desire to revisit Associated's Tampa Greyhound Track.  Wilder's unrebutted testimony reflected that he traveled to the Track six or eight times per year for the last three years.  Because these trips are usually "spontaneous," "there [was] no set

5

date" for his next visit when this case was before the district court. Even so, his interrogatory answers signaled an intent to visit the track over Christmas vacation, and in March, May, June, and July of 2005. Dis. Ct. DK. 54 interr. answers p. 4. Wilder testified that possible visits were also being contemplated for Father's Day and Thanksgiving. Dis. Ct. DK. 39, T. 167 ¶¶3-10).

Even if Wilder had not expressed an intention to visit the track on Father's Day or next Thanksgiving, there can be no question that he gave adequate "specification of when the 'some day' will be." Id. Wilder's professed intention to return to the Track in certain months and during certain vacations is clearly adequate to confer standing if, as the language above suggests, merely stating when "some day" might be could have conferred standing on the plaintiffs in Lujan.

Whereas the Lujan plaintiffs were one-time visitors to far-flung places, Wilder has visited the Track between 18 and 24 times in the past three years. Given this track record, so to speak, we cannot fathom how or why Wilder has failed to "allege[] facts giving rise to an inference that he will suffer future disability discrimination by the defendant." Schotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2004). In the absence of a change in circumstance material to the plaintiff's future attendance at a particular facility, such recent and consistent use of the facility, wholly uncontested by defendants as a factual matter, leaves

practically no reason why Wilder should have had to provide a "set date" and "concrete plans" for his return. Wilder's recent and frequent use of the Track makes his intent to return credible *on that basis alone*. As the Supreme Court has said, evidence of past wrongs bears strongly on "whether there is a real and immediate threat of repeated injury." City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983)

Especially in the disability context, a "specific-date/set-plans" standard would produce patently absurd results, and would almost certainly place plaintiffs in a Catch-22 so far as their credibility is concerned. To have standing under the ADA, is a wheelchair-bound individual who consistently but unpredictably frequents a particular Burger King required to predict the very day on which he will next crave a Whopper?[2] This Circuit has already held that the disabled need not plan their lives in such minute detail and with such vast forethought in order to invoke the ADA's protection.[3] For example, the plaintiff in Stevens v. Premier,

---

[2] See Clark v. Burger King, 255 F.Supp.2d. 334 (D.N.J. 2003) ("Based on Clark's prior visits to Burger King restaurants, and his intent to return to these restaurants, we find that Clark has demonstrated a real and immediate threat of future injury, and has thus, satisfied the injury in fact requirement.").

[3] The trial court bemoaned that "Wilder could not even recall the date of his visit to the Track that led him to file the complaint in this case." If anything, this "inability" only confirms the absurdity of requiring Wilder to name specific dates and formulate concrete plans regarding his *future* visits to the facility. Attending a dog track, like eating at a fast-food joint, does not require and usually does not entail such intensive preparation.

7

215 F.3d 1237 (11th Cir. 2000) intended to reuse the facility at issue (a cruise ship) only if it was altered to comply with the ADA. Obviously the timing of such compliance could not be predicted – and was, indeed, extremely speculative to the extent that it depended on the result of the litigation itself. Nonetheless, we held that a proposed amended complaint alleging Stevens' intention to use the facility "in the near future" "would have cured the original complaint's failure to plead standing." Id. at 1239.[4]

Our decision in Stevens cannot be squared with its resolution of the present case. If Stevens, who only once used defendant's facilities, could have "cured" his standing problem by simply affirming his intent to do so again "in the near future," Wilder clearly had no standing problem to begin with. I respectfully dissent.

---

[4] The district courts of our Circuit have relied upon this precedent. See, e.g., Access Now, Inc. v. S. Fla. Stadium Corp., 161 F. Supp. 2d 1357, 1363-66 (S.D. Fla. 2001) (finding injury-in-fact where individual plaintiff stated, without naming any specific dates, that he "used to regularly attend games" at Miami's Proplayer Stadium and "would return, particularly if the alleged barriers are removed").